# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 51654

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, November 2024 Term |
| | ) | |
| v. | ) | Opinion Filed: April 17, 2025 |
| | ) | |
| ESEQUIEL A. RUIZ, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Javier L. Gabiola, District Judge.

The district court's order relinquishing jurisdiction is <u>vacated</u> and <u>remanded</u>.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant, Esequiel A. Ruiz. Andrea Reynolds argued.

Raúl Labrador, Idaho Attorney General, Boise, for Respondent, State of Idaho. Kale Gans argued.

_____

BEVAN, Chief Justice.

This case comes to the Court on a petition for review. Esequiel Ruiz appeals the district court's order relinquishing jurisdiction. Ruiz pleaded guilty to one count of grand theft. He was sentenced to a unified term of eight years with four years determinate and placed on probation. Following a probation violation, the district court revoked probation and executed the previously suspended sentence, while retaining jurisdiction. A program manager with the North Idaho Corrections Institute ("NICI") recommended Ruiz be placed on supervised probation, and Ruiz signed an agreement of supervision in anticipation of the district court adopting that recommendation. The district court later relinquished jurisdiction. On appeal, Ruiz argues that the district court abused its discretion in relinquishing jurisdiction without providing an explanation and without a jurisdictional review hearing. For the reasons below, the district court's order relinquishing jurisdiction is vacated.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

The State charged Ruiz with grand theft after Ruiz was seen stealing packages from residences. Ruiz pleaded guilty to grand theft under Idaho Code section 18-2407(1)(b)(9). In September 2020, the district court sentenced Ruiz to eight years, with four years determinate, and placed him on probation. The following year, in September 2021, the State moved to revoke Ruiz's probation, alleging that he had violated the terms of his probation by harming his wife during a domestic dispute, failing to take mental health medications, and failing to complete domestic violence treatment. In October 2021, the district court held a probation violation hearing. At that hearing, Ruiz admitted to violating his probation. In its oral ruling, the district court revoked Ruiz's probation and confirmed his sentence of four years fixed, with four years indeterminate. The district court told Ruiz it would retain jurisdiction for 365 days and place him in the rider program to allow him to complete that program. If Ruiz successfully completed the program, the court told Ruiz he would "come back, we'll see where we go from there. But that's going to be up to you."

In May 2022, the NICI rider program manager recommended that the district court reinstate Ruiz on supervised probation. An attached update to the presentence investigation ("APSI") revealed that Ruiz had "five written warnings, one incident, and three infractions" while at NICI. But the case manager noted, "Ruiz completed his required programming and appears to have demonstrated he understands the skills and concepts of recognizing his risky thinking and using new thinking to make better decisions." "All in all, despite the behavior issues," the case manager concluded, "Ruiz is a good candidate for supervised probation in the community." Around the same time, Ruiz signed an Agreement of Supervision, in anticipation of being placed on probation.

Despite NICI's recommendation, and without holding a jurisdictional review hearing, the district court entered an order relinquishing jurisdiction and executing Ruiz's original sentence. Ruiz appealed to the Idaho Court of Appeals, which affirmed. Ruiz then petitioned for rehearing to this Court, which was granted.

## II. STANDARD OF REVIEW

This Court "review[s] a decision to relinquish jurisdiction for abuse of discretion." *State v. Flores*, 162 Idaho 298, 300, 396 P.3d 1180, 1182 (2017) (quoting *State v. Latneau*, 154 Idaho 165, 166, 296 P.3d 371, 372 (2013)). In reviewing an alleged abuse of discretion, this Court considers "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to

2

the specific choices available to it; and (4) reached its decision by the exercise of reason." *State v. Bodenbach*, 165 Idaho 577, 591, 448 P.3d 1005, 1019 (2019) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863 (2018)).

### III. ANALYSIS

The sole issue on appeal concerns the process a district court must engage in to make the decision to relinquish jurisdiction. Ruiz argues that a district court abuses its discretion when it relinquishes jurisdiction over a defendant without explaining the reason for its decision. Ruiz contends that because he performed well on the rider, and earned a recommendation for probation, the district court abused its discretion when it failed to explain its reasoning for relinquishing jurisdiction. The State responds that the district court had sufficient information to determine that probation would be inappropriate under Idaho Code section 19-2521(3)(a), and good performance on a rider alone does not show an abuse of discretion. While that may be true, the challenge for this Court in reviewing the district court's exercise of discretion is that it articulated no rationale for relinquishing jurisdiction over Ruiz, and thus we conclude that the court abused its discretion.

It is well established that a decision to relinquish jurisdiction is reviewed under the abuse of discretion standard. *See State v. Le Veque*, 164 Idaho 110, 115, 426 P.3d 461, 466 (2018); *State v. Merwin*, 131 Idaho 642, 648, 962 P.2d 1026, 1032 (1998). And "[r]efusal to retain jurisdiction will not be deemed a clear abuse of discretion if the trial court has sufficient information to determine that a suspended sentence and probation would be inappropriate under I[daho] C[ode] [section] 19-2521." *State v. Statton*, 136 Idaho 135, 137, 30 P.3d 290, 292 (2001) (quotation marks and alterations omitted).

The State moved to revoke Ruiz's probation in September 2021, alleging multiple violations, which include a domestic incident between Ruiz and his wife and concerns from his probation officer that "Ruiz is still exhibiting violent behavior[,]" and "has not appropriately addressed his criminal thinking, mental health, and anger concerns."

Ruiz admitted to violating the terms of his probation. At the ensuing disposition hearing in October 2021, the district court concluded that it would revoke Ruiz's probation, but agreed to retain jurisdiction for one-year while Ruiz completed a rider program:

> I'm going to revoke your probation. I'll reinstate your sentence of four years fixed, four years indeterminate. I will, however, retain jurisdiction for a period of 365 days and allow you to complete the rider program. At this point, based on what I have in front of me, Mr. Ruiz, I think that additional structure through the rider

program is what you need at this time. And if you're successful on that program, you come back, we'll see where we go from there. But that's going to be up to you. So I'm still giving you an opportunity, and I hope you do take this opportunity to do well on the rider program.

When Ruiz completed the rider, the NICI recommended that the district court reinstate Ruiz on supervised probation. Despite having "five written warnings, one incident, and three infractions" while at NICI, the case manager noted that "Ruiz completed his required programming and appears to have demonstrated he understands the skills and concepts of recognizing his risky thinking and using new thinking to make better decisions." His case manager concluded that, "despite the behavior issues . . . Ruiz is a good candidate for supervised probation in the community."

With no objection from the State, Ruiz signed a supervision agreement binding him to the standard terms for supervision. In a letter, NICI notified the district court that Ruiz would be available for a jurisdictional review hearing after May 24, 2022. On May 20, the district court entered an order relinquishing jurisdiction. The form order used by the district court was a "check the box" form with the box next to "**RELINQUISHMENT OF JURISDICTION**" checked, and one sentence stating that the court "hereby relinquishes jurisdiction of the Defendant." (Emphasis in original). The district court did not hold a jurisdictional review hearing or provide any written explanation for its decision. As a result, there is nothing in the record capable of review regarding the "process" the district court engaged in to reach its decision.

The State maintains that just because the district court chose to exercise its discretion and not follow NICI's probation recommendation does not show the district court abused its discretion. That is correct as far as it goes—but without some indication from the district court about the facts it considered and how it weighed those facts, we cannot determine whether the district court engaged in an exercise of reason. "The role of this Court, in determining if the district court reached its decision by an exercise of reason, is to review the *process* the district court engaged in to make its decision." *Le Veque*, 164 Idaho at 115, 426 P.3d at 466 (emphasis added) (quoting *Palmer v. Spain*, 138 Idaho 798, 801, 69 P.3d 1059, 1062 (2003)). A discretionary decision is arbitrary if not reached by an exercise of reason. *Id.* The district court's fill-in-the-blank decision here is arbitrary because, given the conflicting facts in the record, the court gave us no means through which we can review its decision-making exercise.

4

The dissent contends that a review of the record as a whole points to facts that corroborate the district court's decision. To be sure, there is ample evidence in the record to support the district court's decision to relinquish jurisdiction over Ruiz (e.g., an extensive, violent criminal history; domestic violence against his wife; failure to complete domestic violence treatment). But whether the district court considered that evidence, and to what degree, is unclear. Although we can review a district court's decision if the context surrounding the court's reasoning is clear, that is simply not the case here. We are left to guess why the district court departed from NICI's recommendation. The dissent maintains that the district court has no obligation to explain why it departed from NICI's recommendation. This perspective overlooks the standard of review that guides this Court on appeal. While NICI's recommendation is not binding on the district court, why the district court departed from it and whether the recommendation carried any weight at all are factors we must consider in evaluating the process that the district court engaged in when it reached its decision.

In *State v. Flores*, which Ruiz relies on, the defendant was charged with one felony count of eluding a police officer. 162 Idaho at 299, 396 P.3d at 1181. The defendant pleaded guilty, and the district court imposed a five-year unified sentence, with three years determinate and two years indeterminate. *Id.* The sentence was suspended, and the defendant was placed on probation. *Id.* Following a series of probation violations in which the defendant's probation was revoked and reinstated, the district court ultimately suspended the execution of the judgment and retained jurisdiction. *Id.* Four months later, NICI filed an addendum to the presentence investigation report, informing the district court that NICI had removed the defendant from its facility because he was a security risk. *Id.* At NICI's recommendation, the district court relinquished jurisdiction. *Id.* at 300, 396 P.3d at 1182. Flores appealed, challenging the court's decision to relinquish jurisdiction and its decision to deny Flores' motion to reconsider. *Id.*

On appeal, this Court found no abuse of discretion. *Id.* The Court also affirmed the district court's decision to deny Flores' motion to reconsider. *Id.* at 301, 396 P.3d at 1183. In reaching its decision, the Court explained that Flores' motion was filed under Idaho Criminal Rule 35, but that rule "does not create a general basis for requesting reconsideration of an order or a judgment in the criminal context." *Id.* at 302, 396 P.3d at 1184. Instead, the Court explained, the rule permits a correction, modification, or reduction of criminal sentence. *Id.* But Flores' motion did not seek a correction, modification, or reduction of a criminal sentence.

5

Although Ruiz points to *Flores* to support his statement that he cannot request reconsideration, it was this Court's analysis on the decision to relinquish jurisdiction that is more pertinent here. Unlike the decision in Ruiz's case, the district court in *Flores* issued a well-reasoned decision that *explained* why it was relinquishing jurisdiction. That decision allowed this Court to review the district court's decision-making process. We explained that the district court, in recognizing the issue as discretionary,

> cited several relevant cases for the governing law. It then found it proper to relinquish jurisdiction, reasoning that Flores had
>
>> created and possessed gang related items and drawings and was actively involved in workouts that were aimed at encouraging and enforcing gang hierarchy and behavior. He was also closely associated with inmates who were instrumental in planning and carrying out a disciplinary assault and battery on another inmate. Additionally, FLORES was found to have used the PIN numbers of nine other offenders to make personal phone calls.

*Id.* at 300, 396 P.3d at 1182.

We affirmed the district court's decision because it provided reasoning for this Court to review; we engaged in an abuse of discretion analysis stemming from that reasoning and the exercise of reason contained within the four corners of the district court's decision. No such review is possible here because the district court simply checked a box and failed to explain its decision.

The State and dissent both rely on *State v. Statton*, 136 Idaho 135, 30 P.3d 290 (2001) as support for the district court's order. In *Statton*, the defendant pleaded guilty to first-degree arson and was sentenced to a unified term of imprisonment for ten years, with two years determinate. *Id.* at 136, 30 P.3d at 291. The district court retained jurisdiction for 180 days and placed the defendant on a rider at NICI. *Id.* NICI later submitted its evaluation of the defendant to the district court as an addendum to the presentence investigation report. *Id.* On reviewing the APSI, the district court relinquished jurisdiction. *Id.* On appeal, the defendant argued that the decision not to place him on probation was an abuse of discretion because the judge relied on the NICI recommendation, which was not factually supported. *Id.* at 137, 30 P.3d at 292. This Court disagreed, holding that the district court did not abuse its discretion in relinquishing jurisdiction because "[g]ood performance at NICI, though commendable, does not alone create an abuse of discretion in the district judge's decision not to place the defendant on probation or reduce the sentence."

*Statton* is distinguishable from the facts here. The district court adopted the NICI recommendation in *Statton*, which explained why the court relinquished jurisdiction. But here,

Ruiz claims that the district court abused its discretion not just because it failed to follow NICI's recommendation, but more particularly because it failed to explain why. From the record, we know that the district court departed from the NICI's recommendation, but beyond that we are left without any stated rationale of what facts the court considered, and how the court weighed those facts. Without that information, we cannot conclude whether the district court reached its decision by an exercise of reason. Although the dissent characterizes our consideration of the district court's failure to articulate why it departed from NICI as "open[ing] the door" to procedural due process arguments, we emphasize a subtle distinction: Nothing in this opinion opens the door to new arguments; our conclusion is based on simply applying the standard of review set forth in *Le Veque* to the question before us. Our decision is not based on the outcome of the district court's relinquishment order, but on the process, or lack thereof, used by the district court to reach the discretionary decision that it did.

The State argues, and we agree, that the district court need not hold a jurisdictional review hearing before relinquishing jurisdiction, and so a failure to hold such a hearing cannot be an abuse of discretion. *See, e.g.*, *State v. Smith*, 130 Idaho 450, 454, 942 P.2d 574, 578 (Ct. App. 1997) ("A hearing before the trial court is not required as a condition precedent to that court's relinquishing jurisdiction under I.C. § 19-2601(4)."); *State v. Lopez*, 102 Idaho 692, 693, 638 P.2d 889, 890 (1981). That is correct so far as it goes—but that is not the point. Although the district court is not required to hold a jurisdictional review hearing, when the record contains conflicting evidence and the district court fails to articulate the reasons for its decision, we find an abuse of discretion. This case is not *Statton*, where the record contained a clear directive and recommendation to relinquish jurisdiction. Here, the State's own agents recommended probation. While the district court is free to reject that recommendation, we do not know whether the district court here was unaware of that recommendation or gave it no weight. We have no way to determine whether the court exercised reason in its decision making. Thus, when there is conflicting, relevant evidence in the record, the district court must provide its reasoning for relinquishing jurisdiction to satisfy the abuse of discretion standard. Again, this appeal does not present a question about whether Ruiz had the right to a hearing; he had no such right. *See State v. Coassolo*, 136 Idaho 138, 30 P.3d 293 (2001) (defendant did not have constitutionally protected liberty interest that would require hearing before district court relinquished jurisdiction). This appeal raises a different question about the district court's *process* that the record must identify before a district court relinquishes jurisdiction. This

does not require a hearing, but it does require the district court to explain its written rationale with more than a check-the-box form. The abuse of discretion standard requires this Court to review the decision-making process that the district court engaged in. Without any explanation for why the district court relinquished jurisdiction, this Court cannot engage in such a review.

Briefly, the State also suggests that Ruiz failed to make a record below and is now blaming that failure on the district court. The State claims that Ruiz is demanding the State prove the district court did not abuse its discretion without an adequate record to demonstrate such an abuse occurred. This misconstrues Ruiz's argument.

Ruiz's argument asks this Court to evaluate the *process* that the district court engaged in when it relinquished jurisdiction. Ruiz correctly points out that this Court cannot evaluate that process because the district court did not explain how it reached its decision. *See Lunneborg v. My Fun Life*, 163 Idaho 856, 871, 421 P.3d 187, 202 (2018) (quoting *Sheridan v. St. Luke's Reg'l Med. Ctr.*, 135 Idaho 775, 782, 25 P.3d 88, 95 (2001)) ("The role of this Court in determining if the district court reached its decision by an exercise of reason is to review the process the district court engaged in to make its decision."). That is distinct from failing to provide an adequate record and then trying to point to that inadequacy to support an argument on appeal. This appeal does not invoke a question about whether a party has made an adequate record below. Instead, this appeal turns on the district court's threadbare decision that is in the record, and the standard of review that this Court applies to determine whether a district court abuses its discretion. For the reasons above, we hold that the district court abused its discretion in this case.

Finally, our holding today will only be applied prospectively and to the order relinquishing jurisdiction in Ruiz's case. Like our decision in *State v. Ingraham*, requiring the district court to explain its reasoning for relinquishing jurisdiction "does not alter punishable conduct[,]" nor is it "a watershed rule implicating a trial's fundamental fairness." 172 Idaho 30, 528 P.3d 966, 979 (2023). As a result, we apply this holding prospectively.

## IV. CONCLUSION

The district court's order relinquishing jurisdiction is vacated and remanded for the district court to issue appropriate findings consistent with this opinion.

JUSTICES MOELLER and ZAHN CONCUR.

BRODY, J., dissenting.

8

I dissent. There's no mystery surrounding the district court's decision to relinquish jurisdiction. The record shows that Esequiel A. Ruiz was 45 years old at the time of the district court's decision and had a long criminal history that included convictions in several states for trespassing, arson, disorderly conduct, misdemeanor battery, shoplifting, domestic assault, negligent child abuse, assault, resisting arrest, and theft. The district court originally sentenced Ruiz to a unified sentence of eight years in prison, with four years determinate and four years indeterminate. The district court suspended that sentence and placed Ruiz on probation. Probation was not successful.

Just a year after being sentenced, the State moved to revoke Ruiz's probation on multiple grounds, including being involved in a domestic violence incident that did not result in criminal charges, failing to take mental health medications as required, and failing to participate in domestic violence treatment as instructed. Ruiz's probation officer also expressed concerns that he was exhibiting violent behavior and had not appropriately addressed his criminal thinking, mental health, or anger management problems. The probation officer recommended continuing probation with the condition that Ruiz be required to complete a domestic violence treatment program and participate in mental health treatment. Ruiz admitted to the probation violation, and at a subsequent disposition hearing, despite the probation officer's recommendation, the district court revoked probation and retained jurisdiction, placing Ruiz on a rider.

Ruiz was placed at North Idaho Correctional Institution ("NICI") to complete his rider. On May 3, 2022, the district court received a letter from NICI advising that Ruiz would be available for a jurisdictional review hearing after May 24, 2022. About two weeks later, on May 18, 2022, the district court received the Addendum to the Presentence Investigation ("APSI"), which included NICI's recommendation that Ruiz be placed on probation. The APSI laid out Ruiz's discipline record while on the rider. It showed that, within a week of his arrival, he received his first written warning. Over the course of a four-month period (of a six-month stay), he went on to receive a total of five written warnings (three of which were for the same misconduct), three infractions, and one incident. The report noted that, while some of the violations were not serious, "they do show that Mr. Ruiz was not willing or able to stop committing them when addressed and it took 'progressive discipline' to get his attention." The report also stated that Ruiz's case manager was "on the verge of recommending relinquishment since intervention and sanctions up [to] that point had not worked." The case manager explained that when he was considering relinquishment,

9

"it was out of concern about Mr. Ruiz's repeated violations and his lack of using new thinking on the unit to avoid these situations rather than the severity of the violations themselves."

The case manager credited Ruiz for eventually admitting that his thinking was "broken" due to living a criminal lifestyle for several decades and having a problem with authority. Ruiz requested additional help, so the case manager took Ruiz's case to the Team Case Management ("TCM"). The TCM agreed to extend Ruiz's time at NICI to allow him to take some optional mental health classes and to give him the opportunity to demonstrate that he could employ new thinking skills. The APSI stated that Ruiz's behavior on the unit improved, which demonstrated success in transferring the skills he learned. The APSI concluded Ruiz was a good candidate for probation despite his disciplinary record. At the time of the issuance of the APSI, 45 days had elapsed since Ruiz's last disciplinary event. Two days after receiving the APSI, the district court signed a summary order relinquishing jurisdiction. The order was filed by the Clerk of the Court four days later, on May 24, 2022.

The district court's decision to relinquish jurisdiction was swift and summary, but for me, that is not a basis to vacate the decision. Looking at the record as a whole, the district court had sufficient information to determine that a suspended sentence and probation would be inappropriate under Idaho Code section 19-2521, the statute setting forth the criteria for placing a defendant on probation or imposing imprisonment. *State v. Statton*, 136 Idaho 135, 137, 30 P.3d 290, 292 (2001) ("Refusal to retain jurisdiction will not be deemed a 'clear abuse of discretion' if the trial court has sufficient information to determine that a suspended sentence and probation would be inappropriate under [Idaho Code section 19-2521]." (quoting *State v. Merwin*, 131 Idaho 642, 648, 962 P.2d 1026, 1032 (1998))). As such, I would affirm the district court's decision.

The majority acknowledges there are ample grounds for relinquishing jurisdiction based on the record, but, nonetheless, concludes the district court's decision must be vacated because it cannot determine whether the district court exercised reason since it did not articulate its rationale either on the record at a hearing or in the written order relinquishing jurisdiction. The majority concludes: "[a]s a result, there is nothing in the record capable of review regarding the 'process' the district court engaged in to reach its decision." The Court also concludes the district court's decision is "arbitrary because, given the conflicting facts in the record, the court gave us no means through which we can review its decision-making exercise." I disagree with the majority's analysis, and, like the Court of Appeals did when it reviewed this case, would employ the sufficient

10

information standard articulated above from this Court's decision in *Statton* and affirm the district court's decision.

To begin with, I do not know what to make of the majority's statement that there are conflicting facts in the record that preclude it from reviewing the district court's decision. What conflicting facts are there? The majority's analysis seems to point to NICI's probation recommendation in the APSI and the fact that the district court made a contrary decision to relinquish jurisdiction. Those, however, in my view, are not conflicting facts. Moreover, the majority's conclusion that "[w]e are left to guess why the district court departed from NICI's recommendation" misapprehends the law pertaining to NICI recommendations. The district court had no obligation to explain why it departed from NICI's recommendation. This Court made it clear nearly 30 years ago that the decision to relinquish jurisdiction is committed to the district court's discretion, and that NICI's recommendation is "purely advisory and is in no way binding . . . ." *Merwin*, 131 Idaho at 648, 962 P.2d at 1032 (quoting *State v. Landreth*, 118 Idaho 613, 615, 798 P.2d 458, 460 (Ct. App. 1990)).

I am concerned that the Court's focus on the district court's failure to address NICI's probation recommendation may call into question this Court's decision in *State v. Coassolo*, 136 Idaho 138, 30 P.3d 293 (2001), which held that an inmate placed on a rider does not have a constitutional right to a hearing before the district court relinquishes jurisdiction. In *Coassolo*, the Court explained that, since the district court does not have an obligation to follow an NICI recommendation, the chance of probation based upon such a recommendation is a mere possibility that does not give rise to a protectible right:

> The decision to relinquish jurisdiction or grant probation is committed to the district judge's discretion. *State v. Merwin*, 131 Idaho 642, 648, 962 P.2d 1026, 1032 (1998). The NICI's recommendation is "purely advisory and is in no way binding upon the court['s]" decision. *Id.* Since a judge need not follow the recommendation of the NICI and the ultimate decision is discretionary, the chance of probation based upon an NICI recommendation is at most a mere possibility or a "coveted goal". [*State v. Wolfe*, 99 Idaho 382, 386, 582 P.2d 728, 732 (1978)]. According to the United States Supreme Court:
>
> > [T]o obtain a protectible right "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead have a legitimate claim to entitlement to it."
>
> [*Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S. Ct. at 2103–04 (1979)] (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701,

2709, 33 L.Ed.2d 548). "That the state holds out the *possibility* of [probation at the end of retained jurisdiction] provides no more than a mere hope that the benefit will be obtained." *Id.* at 11, 99 S. Ct. at 2105.

136 Idaho at 143, 30 P.3d at 298 (all alterations but those related to citations in original). To now vacate a district court's decision to relinquish jurisdiction because it does not explain a departure from an NICI probation recommendation seems to open the door to a procedural due process argument once again.

I also disagree with the majority's attempt to distinguish this case from *Statton*, 136 Idaho at 137, 30 P.3d at 292. As I read it, the majority's decision essentially holds that, if the district court "adopts" NICI's recommendation, then no oral or written explanation is required because the APSI explains the district court's decision. But, if the district court rejects NICI's recommendation, a written decision is required because it is unclear what facts the district court considered and how the district court weighed the facts. The majority leads its analysis of *Statton* with the statement, "[t]he district court adopted the NICI recommendation in *Statton*, which explained why the court relinquished jurisdiction." I do not agree with the majority that, when a district court elects to follow an NICI recommendation, it is somehow "adopting" that recommendation or any part of the APSI. An APSI is not an analysis of the sentencing factors set forth in Idaho Code section 19-2521. The *Statton* court explained the role of the district court on review of a rider under the statute:

> The district judge considers all of the circumstances to assess the defendant's ability to succeed in a less structured environment and to determine the course of action that will further the purposes of rehabilitation, protection of society, deterrence, and retribution.

136 Idaho at 137, 30 P.3d at 292. The APSI contains information that bears on the decision the district court has to make (e.g., the inmate's discipline record and an assessment of the inmate's participation in required programs), but it is no substitute for the district court's decision, which is exactly why the *Statton* court framed its analysis in terms of whether there was "sufficient information" in the APSI from which the district court could properly conclude that the inmate was not a good candidate for probation:

> The report contains facts, which support the human services supervisor's and the district judge's conclusion that Statton will likely relapse into substance abuse and violate the terms of his probation. Statton admits he has emotional and anger management problems that have not been fully addressed. Finally, Statton's immaturity problem, which contributed to his poor performance during an earlier

period of probation, continues to be a concern. Given these facts, the district court could properly conclude that Statton was not a good candidate for probation and that a reduction in sentence was inappropriate.

*Id.* The bottom line is that the "sufficient information" standard applied in *Statton* makes sense regardless of whether the district court elects to follow a recommendation or reject it. In this case, there is sufficient information in the record to support the district court's decision to relinquish jurisdiction, and, as such, I would affirm the district court's decision.

JUSTICE MEYER CONCURS.